Conditioner Leasing Corp., Respondent-Appellant, v. Sternmor Realty Corp., Appellant-Respondent, et al., Defendants.

First Department, March 9, 1965.

536

*Burton M. Fine* of counsel (*Meyer Maltz* and *Fine Posner & Tofel,* attorneys), for respondent-appellant.

*Joseph Greenberg* for appellant-respondent.

STEUER, J. Plaintiff is the assignee of Atlantic Stove & Conditioning Corp. The latter company, on October 18, 1963, leased 125 air-conditioning units to 339 E. 51st Street Corp., the owner of a building located at that address. The lease was for a period of five years at a stipulated monthly rental. The lease provided that the units were not to become part of the realty and were at all times to remain the property of the lessor. The lease contained an acceleration clause providing that in the event of default in the payment of the rental, which default was not cured within 10 days upon demand, the rental for the balance of the period became due. There was a first mortgage on the building held by Brooklyn Savings Bank. This mortgage required the owner to have air-conditioning units of a kind and quality equal to those installed by plaintiff's assignor, and the latter agreed to subordinate its lease to the mortgage. The lease was filed in the office of the Register of the City of New York.

339 E. 51st Street Corp. defaulted in the payment of the rental for June and July, 1964, and, pursuant to the acceleration clause, due notice was given it that the balance of the rental was due. On July 15, 1964, defendant Sternmor Realty Corp. purchased the premises from the owner. Plaintiff, to whom the

contract had been assigned, immediately notified Sternmor (who is the moving defendant) and demanded payment of the balance of rent due, $29,397.42. A few days later defendant advised plaintiff that it had not assumed performance of the lease and suggested that plaintiff remove the units from the premises. Plaintiff advised that it would remove the units on July 28 and requested that the necessary arrangements be made. On July 27, the Brooklyn Savings Bank, being advised by plaintiff that it was about to remove the conditioners, wrote to defendant stating that if the conditioners were removed and not replaced by similar units it would constitute a default on the mortgage. Defendant thereupon withdrew its permission to remove the units and has since then refused to allow plaintiff access to the premises.

Plaintiff sued for the accelerated balance under the lease. Defendant moved to dismiss the complaint. Plaintiff cross-moved for summary judgment. Special Term denied both motions.

We believe that plaintiff's motion should have been granted. It may be conceded that a purchaser of real estate does not by virtue of the purchase also buy personalty in the building nor assume a contract in regard to the same that the prior owner may be liable upon (*Langel* v. *Betz*, 250 N. Y. 159; *Title Guar. & Trust Co.* v. *457 Schenectady Ave.*, 260 N. Y. 119). It is, of course, otherwise where the obligation is assumed. An assumption need not be by formal document (*Frank* v. *New York, Lake Erie & Western R. R. Co.*, 122 N. Y. 197). It may be that where there is no formal writing or act, liability attaches by way of quasi-contract or general equitable principles. The existence of liability has been stated as an exception to the general rule under certain circumstances. " [T]he defendant takes free from any obligation of the former owner as to the balance of the ten-year renewal period, excepting insofar as it has actually availed itself of the benefits of said agreement " (*General Meter Serv. Corp.* v. *Manufacturers Trust Co.*, 182 Misc. 184, 187 [FROESSEL, J.], affd. 267 App. Div. 992). Or it may be put on general principles of equity. " But essentially and fundamentally such an assignee is so held because it is just that he should be required to pay for the use of property which he uses * * * I think that that fundamental consideration of justice requires that defendant copartnership be held liable for such sums as become due to plaintiff under its contract while that copartnership remains in possession of the hotel and uses plaintiff's equipment in the operation thereof, even though there is no technical privity of estate." (*Tel-Hotel Corp.* v. *Lexnott Corp.*, 205 Misc. 576, 584.)

Here the significant act was defendant's revocation of its prior permission to allow plaintiff to remove the units. It is not disputed that this was done with full knowledge of the obligation due under the lease. Nor can there be any doubt that it was done to avoid the necessity of replacing the equipment with like units to obviate a default on its mortgage. There could be no clearer case of an intent by defendant to secure to itself all of the advantages of the lease. It would be manifestly unjust to allow defendant to obtain and retain the benefits of the lease without complying with its terms.

Defendant's contention, that the units remain in the building by virtue of plaintiff's agreement to subordinate them to the mortgage rather than by any act of defendant, is belied by the facts. The mortgagee asserted no claim in regard to these particular units. Providing defendant replaced them, it was quite willing that they should be removed. The initiative was altogether with the defendant. It could keep the units, in which event it should meet the obligations of the contract; or it could replace them on any terms that it could make, in which event it would be free of the contract. All parties so understood and so acted. Defendant is reduced to the untenable position that it can have the use of the air conditioners without liability on the contract for their use — in fact, without any liability at all. And the rule that its purchase of the premises did not obligate defendant further to perform an executory contract has no application on the facts. The further contention that the acceleration clause constitutes an unenforcible penalty is without merit (*Belnord Realty Co.* v. *Levison*, 204 App. Div. 415).

Order should be modified on the law by directing summary judgment for the plaintiff for the relief demanded in the complaint, judgment directed to be entered accordingly, and otherwise should be affirmed, with costs and disbursements of this appeal to plaintiff-appellant.

RABIN, J. (dissenting). I would not grant summary judgment to the plaintiff as against the defendant Sternmor Realty Corp. for the accelerated rent as plaintiff requests in its first cause of action. Such relief was denied by Special Term and I would affirm that denial. If summary judgment could be granted at all on the papers before us, my inclination would be to grant it to the defendant. However, I think Special Term properly refused the summary judgment to either of the parties.

It should be noted that the defendant Sternmor Realty Corp. is not being held liable for the use of the air conditioners, nor is it being held liable for unlawful possession of the air condition-

ers. It is being held liable for the accelerated rent under a lease of the air conditioners to its predecessor in title — the plaintiff having exercised its option to declare the entire balance of the rental due because of the default in the payment of monthly rent by the defendant's predecessor in title. It should be further noted that the default, the exercise of the option to declare the total rent accelerated, and the demand for the accelerated rent, occurred prior to the time that the defendant Sternmor took title.

Quite true, the defendant took title subject to the lease. It does not follow, however, that having taken title subject to the lease, it assumed liability for payments under the lease any more than one who takes title to real estate subject to a mortgage, assumes the obligation of the mortgage debt. In the latter instance the mortgagee would be relegated to whatever recourse it has as against the property. Likewise, in this case the vendor of the air conditioners should be relegated to whatever recourse it has against the property leased and, in addition, it could hold its original lessee to its liability. The majority holds this to be true, i.e., there can be no finding of liability against the defendant Sternmor merely because it took title subject to the lease unless it assumed the obligation of the lease. There was no express assumption either by way of a writing or otherwise at the time of the closing of title or thereafter.

However, the majority spells out an assumption through the conduct of the defendant. Specifically, the majority holds that because the defendant refused to permit the plaintiff to remove the air conditioners such refusal constituted an assumption of the lease. Such assumption would make the defendant liable, not for current rent but, because the full balance of the rent under the lease had been declared accelerated prior to the transfer of the property, it would make it liable for the full accelerated amount due to the plaintiff by the defendant's vendor — the original lessee. Assuming that the plaintiff had a right to the possession of the air conditioners at the time it made its demand therefor, refusal by the defendant to allow it to gain possession might make the defendant liable in conversion, but such refusal does not constitute an assumption of a debt of the original lessee, which debt was already past due. I doubt that, because of the subordination by the plaintiff of the air conditioners to the lien of the mortgages on the premises, it had a right to possession. But, be that as it may, and assuming it did, as already indicated, the defendant could conceivably be guilty of conversion, but not liable for past-due rent on the basis of an assumption of the lease.

The majority says it would be unfair and inequitable to allow the defendant to retain the use of these air conditioners without paying therefor. That may be so, but equity would simply require, if liability be fixed on the defendant for the use of the air conditioners, that it pay for such use. That is quite different from fixing upon it an obligation to pay for the accelerated rent for the balance of the term which fell due before it took title.

In finding that this defendant assumed the lease, the majority relies primarily upon three cases. However, as I read these cases they do not support the view that this defendant, by its conduct, assumed the obligation of the lease. To the contrary they support the position that there was no such assumption.

In *General Meter Serv. Corp.* v. *Manufacturers Trust Co.* (182 Misc. 184, affd. 267 App. Div. 992), a supplier of electric current entered into an agreement with the owner of a building whereby the former would supply electric current for a stipulated charge. The owner sold the building (after the date on which the agreement was automatically renewed by its terms) and the new owner subsequently advised the supplier that it elected not to continue the submetering agreement. The supplier sued, contending that the new owner having had knowledge of the agreement, having permitted the metering equipment to remain on the premises, and having received the benefits of the agreement for a time after the purchase, in effect assumed the agreement. The court, however, held that there was no assumption. The language relied upon by the majority and quoted in its opinion indicates only that the new owner was obliged to pay for what electric current it had actually used. It was not held liable for the obligations of the original agreement as it would have been had the court held that there had been an assumption.

Nor do the other cases principally relied upon to support the instant finding of an assumption (*Tel-Hotel Corp.* v. *Lexnott Corp.*, 205 Misc. 576; *Frank* v. *New York, Lake Erie & Western R. R. Co.*, 122 N. Y. 197) do so. In those cases the defendants were found to be assignees of the particular agreements involved —unlike the instant case where no assignment may be found. However, even in those cases, where there were assignments, the assignees were not held to have assumed the agreement. At most, they were held liable to pay the sums due under the agreement so long as they continued to use the leased equipment or premises. That is a far cry from holding them to have assumed —a holding which would render them liable not only for the period of actual use but for the entire term of the agreement. In any event, as aforesaid, there was no assignment here.

It may very well be that because the plaintiff subordinated its lease to the mortgages on the premises it became impermissible for it to remove its air conditioners. But that situation was of its own making. It could have properly protected itself in the first instance by making provision with its lessee that title to the property would not pass unless there were an assumption of the lease by the vendee. Or, it need not have subordinated its lease to the mortgages. The defendant cannot be found to have assumed the obligation of the lease merely because the plaintiff put itself in a position where it could not remove the air conditioners without subjecting itself to liability to the mortgagees — a possible liability created by itself. Nor can the defendant be held to have assumed the lease by reason of its refusal to allow the plaintiff to remove the air conditioners — the removal of which could result in a declaration of a default under the mortgages. Nor may we spell out an assumption from defendant's refusal to replace the air conditioners. The defendant never assumed any such obligation. If any liability should be fixed upon the defendant because, as the majority indicates, it benefited by the situation created by the plaintiff, then such liability should be limited to payment for the actual use of the air conditioners.

The foregoing discussion is made upon the assumption that the facts are all clear. However, the papers are not at all clear as to what took place at the time of the closing, nor are they sufficiently clear as to what took place thereafter. I think the facts must be developed at a trial. Specifically, I point to the plaintiff's third cause of action wherein the plaintiff alleges that pursuant to the terms of sale and transfer " a sufficient sum of money was left in escrow out of the purchase price to pay the obligation of defendant, 339 E. 51st Street Corp. [defendant's vendor] under the said lease." True, we get no enlightenment from the defendant with respect to any escrow, but the plaintiff swears in its third cause of action that there was such an escrow. Whether that be so or not would have an important bearing on the liability of this defendant for the accelerated rent. That sworn allegation by the plaintiff makes it impossible to grant summary judgment to it without first exploring, through trial, all of the facts with respect to the alleged escrow as sworn to by the plaintiff.

Accordingly, in all of the circumstances I think that a trial should be had and consequently I would deny summary judgment to the plaintiff on its first cause of action for the accelerated rent and would affirm the decision of Special Term which denied summary judgment to either party.

Breitel, J. P., and McNally, J., concur with Steuer, J.; Rabin, J., dissents in opinion in which Witmer, J., concurs.

Order, so far as appealed from, entered on October 26, 1964, modified, on the law by directing summary judgment for the plaintiff for the relief demanded in the complaint, and the Clerk is directed to enter judgment accordingly, and, as so modified, affirmed, with $30 costs and disbursements to plaintiff-appellant.