OPINION OF THE COURT
Edward H. Lehner, J.
The question raised herein relates to the enforceability of an acceleration clause in a lease for personal property which does not contain a provision authorizing repossession upon a default in payment of rent.
FACTS
Plaintiff is assignee of the lessor under a lease agreement dated November 10, 1978 between U-Vend, Inc., as lessor and defendant as lessee for the rental of a soda vending machine. The lease commenced upon delivery of the machine on December 1,1978 and was for a term of 39 months at a monthly rental of $79.50. After paying rent for 11 months, defendant wrote to U-Vend and to plaintiff in November, 1979 requesting the removal of the machine and stating that no further rent would be paid because the machine had failed to perform as guaranteed. Plaintiff refused to take possession and defendant ceased to pay rent.
*1073 Plaintiff claims that by reason of defendant’s default, the rental due for the remaining 28 months of the lease was accelerated and that defendant therefore owes the sum of $2,226, plus attorneys’ fees of $445.20 (20% of the amount due), and sales tax of $178.08. The action was severed as to the individual defendant who was never served with process. During trial the parties stipulated that plaintiff is entitled to an attorneys’ fee of 20% of whatever sum is found owing under the lease. The defendant counterclaimed seeking a $500 storage fee.
Paragraph 13 of the lease provided as follows: “13. In case the Lessee’s failure to pay the rentals provided for above for a period of five (5) days after written notice of such default shall have been given to the Lessee the Lessor shall have the right to declare all rentals for the entire term of the lease to be past due and payable. Upon the Lessee’s becoming insolvent, making an assignment for the benefit of creditors, becoming a bankrupt, filing a petition for an arrangement or for any other relief under the bankruptcy laws, or if a receiver or trustee of the Lessee or its property be appointed, the Lessor may take possession of the leased equipment, including all substituted parts and accessories and after such possession is taken, all Lessee’s rights in said equipment, substituted parts and accessories, shall thereupon cease and terminate.”
Together with the lease defendant was delivered a service guarantee under which U-Vend promised that the machine would “be serviced free of charge, both parts and labor, for the full 39 month term *** on all mechanical malfunctions, misfunctions and breakdowns necessitated by ordinary use.” Such contract further provided that service would be provided within 48 hours after notice and that defendant would be entitled to a rent deduction if service was not made within such period. The guarantee was to be void during any time the lessee was in default. After assignment of the lease, plaintiff guaranteed U-Vend’s performance under the service contract. At trial a representative of U-Vend testified that the average number of service calls performed on a machine each year is between 12 and 15 and that its average cost for each visit is approximately $15.
*1074 BREACH OF LEASE
Although defendant sought to justify its cancellation of the contract, the court finds that it had no basis therefor and that hence, it breached the lease agreement. Consequently, the only issue before the court is the enforceability of the acceleration clause.
LIQUIDATED DAMAGES
There is much discussion in the briefs of cases dealing with the enforceability of liquidated damage clauses. Judicial opinions on this subject have resulted in much conflict. So much so that in 1941 the Appellate Division, Third Department, stated in Hasbrouck v Van Winkle (261 App Div 679, 681) as follows: “Whether a provision for the payment of a sum of money by one party to the other, in a contract for the sale or purchase of land, is, in the event of default to be construed as a penalty or as liquidated damages has given rise to a great variety of judicial utterances. It has been said that if there is any branch of the law inveighed against for uncertainty deserving of such a reproach, it is this subject of the distinction between penalties and liquidated damages *** And no branch can be more truthfully said to be involved in obscurity by contradictory decisions.”
The 1977 Court of Appeals decision in Truck Rent-A-Center v Puritan Farms 2nd (41 NY2d 420) did much to clear the air on this subject. There the court ruled (pp 423-425):
“Liquidated damages constitute the compensation which, the parties have agreed, should be paid in order to satisfy any loss or injury flowing from a breach of their contract *** In effect, a liquidated damage provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement * * * Parties to a contract have the right to agree to such clauses, provided that the clause is neither unconscionable nor contrary to public policy * * *
“A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount *1075 of actual loss is incapable or difficult of precise estimation * * * If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced.”
If the clause in the case at bar were viewed as one for liquidated damages, it would clearly fail as the full amount owing on the lease is certainly not an estimate of the extent of damages that would be sustained upon a breach. U-Vend had service obligations, the costs of which would no longer be incurred subsequent to a default. The fact that plaintiff had no expenses under the lease so long as U-Vend honored its service contract is not relevant as the enforceability of the clause must be judged as of the date when executed. (Seidlitz v Auerbach, 230 NY 167.) The financing arrangements between U-Vend and the plaintiff in connection with the assignment cannot alter the efficacy of the clause. Further, if the clause were a true liquidated damage provision, the parties would have considered re-rental value.
POSSESSION OF LEASED PROPERTY
Thus, it is clear that clause 13 cannot be deemed as an attempt to liquidate damages, but is merely an attempt to accelerate rentals due under the lease. Judged in this respect, defendant argues that plaintiff may not prevail as it was required to mitigate damages and made no attempt to do so. Plaintiff on the other hand argues that no such obligation exists and even if it did, since the lease does not authorize the lessor to recover the property upon a default (except in circumstances not applicable here), plaintiff would have no right to obtain possession in order to rerent.
Regarding the latter argument, the simple answer is that defendant offered the return of the machine. Even if no such offer were made, the fact that the lease does not specifically authorize the right to repossess upon a default would not prevent a court, upon application of a lessor, from granting a judgment of replevin should a lessee refuse to pay rental. It is hard to conceive of a court permitting a lessee who has indicated that he will not pay rent to nevertheless remain in possession of leased property. Therefore, the court finds that plaintiff is in the same legal *1076 position as if a right of repossession upon default were contained in the lease.
ACCELERATION CLAUSE
Acceleration clauses are obviously valid in cases where the only obligation is the payment of money, such as a loan transaction. (See Matter of Merwin & Willoughby Co., 206 F 116; Fairfield Lease Corp. v Marsi Dress Corp., 60 Misc 2d 363.)
The Court of Appeals has recently held, in a case relied upon by plaintiff, that an acceleration clause can be valid in a real estate leasing situation. (Fifty States Mgt. Corp. v Pioneer Auto Parks, 46 NY2d 573.) There the court accelerated all rental due under a 20-year commercial lease because of the tenant’s failure to cure a default in payment of a rental installment. This seemingly harsh result is, however, not relevant to the case at bar because the record on appeal in that case shows that the tenant remained in possession of the premises. Thus, the issue of mitigation did not arise.
Moreover, plaintiff cannot rely on the older judicial decisions holding that an owner of real estate has no obligation to mitigate. Such decisions developed out of the feudal concept of a lease as being a conveyance of virtually all of the owner’s rights in the use of the real property, whose obligations to the tenant, if any, were independent of the covenant to pay rent. (See Rasch, New York Landlord and Tenant Summary Proceedings [2d ed], § 875; Posner and Gallet, Mitigation of Damages in Residential-Lease Breaches, NYLJ, April 5, 1978, p 1, col 2.) As noted in the latter article, several lower court Judges have of late come to reject such concept and have held, with the advent of modern statutory tenant protections such as the warranty of habitability (Real Property Law, § 235-b), that such obligation does exist.
Another case relied upon heavily by plaintiff, Conditioner Leasing Corp. v Sternmore Realty Corp. (17 NY2d 1), is also inapplicable. There the lessor of air-conditioning equipment was held entitled to recover, from the purchaser of the real estate in which such equipment was installed, the entire accelerated amount owing under the lease as a *1077 result of a default thereunder by the prior owner of the realty. The court stated (p 4) that there “was no illegality in the acceleration clause whereby the rent for the balance of the term became due prior to appellant’s entry into possession”. However, the issue of mitigation was not present as the new owner could not, because of a threatened foreclosure by the first mortgagee, return the equipment to the lessor.
MITIGATION OF DAMAGES
The general rule on mitigation of damages is that a party has “the active duty of making reasonable exertions to render the injury as light as possible” (Hamilton v McPherson, 28 NY 72, 76-77) and that “‘[n]o recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures’ ” (Mayes Co. v State of New York, 18 NY2d 549, 554; see, also, Wilmot v State of New York, 32 NY2d 164 [quoting both of the above statements]; 11 Williston, Contracts [3d ed], §§ 1353-1354).
Although discussions of the issue are not frequent, in cases involving leases of personal property, our courts have held (where the issue was raised) that where a lessor had the ability to mitigate, the obligation to do so existed.
In Chemical Bank v Queen Wire & Nail (75 AD2d 999), the plaintiff assignee of an equipment lease claimed the lease had been violated by lessee’s removal of the equipment to South Carolina and that therefore all the rental payments due under the lease for the balance of the term became due and payable. Although a denial of plaintiff’s motion for summary judgment was reversed, judgment for the accelerated balance was refused and the matter was set down for trial on the issue of damages “including mitigation.”
In AMF, Inc. v Cattalani (77 AD2d 779) the lessor of bowling equipment sought to recover six years of accelerated rental payments by reason of the lessee’s breach. The court granted summary judgment to the lessor on the issue of liability but stated (p 780): “[W]e find that the record presented triable issues of fact on the question of damages including whether plaintiff made reasonable efforts to *1078 minimize its loss and that a hearing should have been ordered on this issue * * * [PJlaintiff has had and will have possession of the equipment during the entire six-year period for which it claims damages. It is highly likely that it could, by making reasonable efforts, derive some income therefrom * * * Defendants should have an opportunity to demonstrate that plaintiff is not entitled to damages to the extent of the contract rental.”
Under facts similar to those found herein involving the same plaintiff and the same assignor, the court in Fairfield Lease Corp. v Rockland Fire Equip. Co. (NYLJ, Nov. 17, 1971, p 32, col 7), found “no valid or reasonable basis for exempting the plaintiff from the generally established duty to mitigate damages”.
In Fairfield Lease Corp. v Marsi Dress Corp. (60 Misc 2d 363, supra) the acceleration clause was held to constitute a penalty and to be unenforceable principally because the lease entitled the lessor to both the right to possession of the property as well as the balance of the rentals. In so holding the court did not discuss the issue of mitigation. Because of this court’s finding that such obligation exists, it disagrees with the holding of Marsi Dress. Apparently subsequent to that case the lease form of U-Vend was amended to delete the right of possession upon default.
Plaintiff has submitted four unreported cases involving the present plaintiff in which it obtained judgment for the full accelerated balance. In Fairfield Lease Corp. v Federal Venitian Blind Corp. (Supreme Ct, Westchester County, Index No. 7124/1968) and Fairfield Lease Corp. v Salierno (Supreme Ct, Nassau County, Index No. 541/1970) the only issue discussed in the decisions related to right of the plaintiff to declare a default. In Fairfield Lease Corp. v Paulssen & Guice (Civil Ct, New York County, Index No. 143716/1972) and Fairfield Lease Corp. v Charities Inds. (Nassau County Dist Ct, Index No. 3316/1974) the courts found that because the lease did not grant plaintiff a right of possession upon a default, the acceleration clause did not result in a penalty and was not unconscionable. An obvious corollary of a finding that the lessor could not obtain possession is that it would be unable to mitigate. Since, *1079 this court disagrees with such a finding, it necessarily disagrees with the conclusion.
CONCLUSION
This court holds that the normal obligation to mitigate damages exists under this lease of personal property and after the default occurred herein plaintiff should have, as requested by the defendant, taken possession of the property and sought to rerent same. Having failed to do so and thus ignored such obligation, plaintiff may not recover the accelerated balance. It may recover, however, the rent accrued for the month of November, 1979 of $79.50, sales tax of $6.36, plus (in accordance with the trial stipulation), an attorney’s fee of $15.90, for a total of $101.76. The counterclaim for a storage fee is dismissed as defendant failed to establish a basis for recovery of same.
Having found the obligation to mitigate exists, the court consequently finds that the acceleration clause is not an unconscionable provision under section 2-302 of the Uniform Commercial Code and does not provide for a penalty.
LEGISLATION
A problem that can arise when the issue of mitigation is litigated is the nature of the obligation of the lessor when he has other unrented equipment similar to that which is the subject of the defaulted lease. May he rent such other equipment first without being in violation of the obligation to mitigate? This issue, of course, is not before the court as there was no attempt to mitigate. When the writer was a member of the State Legislature in 1980 the Assembly passed a bill he sponsored (A 1551) (not passed in the Senate) which would have provided a statutory obligation to mitigate where residential units were involved. The bill would have permitted a landlord to lease similar dwelling units unoccupied at the time of default prior to the unit subject to a defaulted lease without violating such obligation. The Legislature is urged to again give attention to this issue.
Judgment for plaintiff in the sum of $101.76 plus interest from November 1, 1979, and counterclaim dismissed.