OPINION OF THE COURT
Chief Judge Cooke.
The question posed on this appeal is whether equity will intervene to prevent enforcement of a provision in a 20-year lease between commercial parties providing for the acceleration of the rent due for the entire lease term upon the tenant’s default in the payment of a monthly rental installment. Reasoning that enforcement of the acceleration clause would exact an unconscionable forfeiture, the Appellate Division affirmed the dismissal of the landlord’s complaint by Supreme Court, Erie County.
There should be a reversal. By failing to tender payment of two monthly rental payments or even offering to cure the default, defendant tenant was in willful breach of a material term of the lease. As the tenant is entitled to possession of the demised premises upon payment of the rent reserved for the balance of the lease term (as well as continued performance of other covenants of the lease) and there is no claim of fraud or exploitive overreaching on the part of the plaintiff in compelling performance of its bargained-for right, the agreement of the parties must be enforced in accordance with its terms.
Fifty States Management Corp. (referred to variously as "Fifty States” and "landlord”) and Pioneer Auto Parks, Inc. *576 (referred to variously as "Pioneer” and the "tenant”), entered into a 20-year lease of commercial property located in Buffalo in 1972. In return for possession, Pioneer covenanted to make rental payments the first of each month throughout the term of the lease. To secure these payments, Fifty States insisted that Pioneer supply a financially responsible guarantor. It also bargained for and received a clause in the lease giving it the option of accelerating future rent due for the balance of the lease term following default in the payment of a monthly installment from which the frequent provisions requiring the landlord to give formal notice of default and granting the tenant a grace period within which to cure its default were conspicuously absent. Defendant Lyon executed and delivered to Fifty States an instrument in which he unconditionally guaranteed the payment of rent fixed and the performance by Pioneer of all terms and conditions of the lease.
No claim has been made that the acceleration clause is boilerplate, unknowingly assented to by the tenant as a result of its being compelled to enter into a contract of adhesion. Indeed, there is nothing in the record which detracts from the conclusion that the clause was anything but the result of intensive negotiations between commercial parties of equal bargaining strength.
The first three rental payments were timely made. However, the check covering the August, 1973 rent was never received by the landlord. The envelope containing the check was incorrectly addressed and was returned to the tenant while its president was on vacation. During that period, however, Pioneer was on notice that the check had not been delivered. Fifty States informed Pioneer’s president that there had been no receipt of the August rental payment and the guarantor inquired of him the reason tenant failed to make payment as required by its lease. On August 20, 1973, the parties met in Buffalo to discuss the problem. When there was no tender of payment by Pioneer, its president was served with a summons and complaint seeking acceleration of the rent payments in accordance with the terms of the lease. The complaint was subsequently amended to reflect the fact that tenant also failed to pay the following month’s rent.
Pioneer resists enforcement of the acceleration clause on the ground that it constitutes a penal forfeiture, long disfavored by equity. It is true that equity will often intervene to prevent a substantial forfeiture occasioned by a trivial or *577 technical breach (see J. N. A. Realty Corp. v Cross Bay Chelsea, 42 NY2d 392, 397-398; Noyes v Clark, 7 Paige 179). To permit literal enforcement of an instrument in such circumstances, it is reasoned, is to elevate the nonperformance of some collateral act into the cornerstone for the exaction of a penalty (5 Pomeroy, Equity Jurisprudence [5th ed], § 455a). Similarly, equity may relieve against the effect of a good faith mistake, promptly cured by the party in default with no prejudice to the creditor to prevent unconscionable overreaching (Graf v Hope Bldg. Corp., 254 NY 1, 13 [Cardozo, Ch. J., dissenting]; 5 Pomeroy, Equity Jurisprudence [5th ed], § 440a; cf. W.F.M. Rest. v Austern, 35 NY2d 610, 614). And, of course, equity abhors forfeitures and courts will examine the sum reserved under an instrument as liquidated damages to insure that it is not disproportionate to the damages actually arising from the breach or designed to coerce the performance of a party (Wirth & Hamid Fair Booking v Wirth, 265 NY 214, 223; Ward v Hudson Riv. Bldg. Co., 125 NY 230, 235; cf. Uniform Commercial Code, § 2-718, subd [1]).
Thus, in rare cases, agreements providing for the acceleration of the entire debt upon the default of the obligor may be circumscribed or denied enforcement by utilization of equitable principles. In the vast majority of instances, however, these clauses have been enforced at law in accordance with their terms (e.g., First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630, 638, mot for rearg den 22 NY2d 827; Conditioner Leasing Corp. v Sternmor Realty Corp., 17 NY2d 1, 4; 5 Pomeroy, Equity Jurisprudence [5th Ed], § 439; Rasch, New York Landlord and Tenant [2d ed], § 376). Absent some element of fraud, exploitive overreaching or unconscionable conduct on the part of the landlord to exploit a technical breach, there is no warrant, either in law or equity, for a court to refuse enforcement of the agreement of the parties. Here, Pioneer points to no circumstances which would justify relieving it of the consequences of its bargain and subsequent default.
Generally, where a lease provides for acceleration as a result of a breach of any of its terms, however trivial or inconsequential, such a provision is likely to be considered an unconscionable penalty and will not be enforced by a court of equity. For example, a clause authorizing acceleration for failure to comply with a covenant collateral to the primary obligation of the tenant is generally held to constitute a *578 forfeiture, for the damages reserved in the lease are disproportinate to any loss which could possibly accrue to the landlord (see Seidlitz v Auerbach, 230 NY 167, 173; 884 West End Ave. Corp. v Pearlman, 201 App Div 12, affd 234 NY 589). A covenant to pay rent at a specified time, however, is an essential part of the bargain as it represents the consideration to be received for permitting the tenant to remain in possession of the property of the landlord. Often the landlord relies on timely payment of rent to meet its own outstanding obligations, such as a mortgage on the demised premises. Thus, an acceleration clause, so common in other commercial transactions, is merely a device in the landlord-tenant relationship intended to secure the tenant’s obligation to perform a material element of the bargain and its enforcement works no forfeiture. This, of course, presumes that the sum reserved for liquidated damages is no greater than the amount the tenant would have paid had it fully performed and that the tenant would be entitled to possession upon payment (see, generally, McManus, The Enforcement of Acceleration Clauses in New York, 8 NYLF 466; Ann., 104 ALR 223, Provisions by Which Upon Breach of Contract the Entire Amount Remaining Unpaid Thereon Shall Become Immediately Due as One for Penalty or for Liquidated Damages).
There can be no claim that the sum reserved under the acceleration clause here bears no relationship to the damages sustained by landlord as a result of the breach. The clause is nothing more than a bargained-for device which seeks to insure the performance of a material element of the obligation of the tenant and fixes the damages for its breach. Upon failure to tender a rental payment, the landlord was merely afforded its contractual option to receive the rental payments reserved for the remainder of the lease term as a condition of defendant’s continued occupancy. While it is true, as Pioneer maintains, that it will lose interest on the money advanced, this factor alone is no more effective in creating a penalty than the parties contracting to receive the entire rent at the beginning of the lease term (Belnord Realty Co. v Levison, 204 App Div 415, 417).
It may very well be that since the initial failure to tender timely payment of the August rent was due to clerical error, equitable relief would have been available to Pioneer had its default been immediately cured upon discovery of the error in *579 the absence of prejudice to plaintiff (see Graf v Hope Bldg. Corp., 254 NY 1, 12-14 [Cardozo, Ch. J., dissenting], supra; 100 Eighth Ave. Corp. v Morgenstern, 4 AD2d 754). In such a case, the failure of the landlord to accept a cure for a trifling mistake without prejudice to himself and then seek enforcement of the acceleration clause would be at least exploitive and, perhaps, unconscionable (see Giles v Austin, 62 NY 486, 493-494; cf. Jones v Gianferante, 305 NY 135, 138). But Pioneer made no attempt to cure its default after being notified by both its guarantor and the landlord that the August rent had not been received. Rather, it blithely sat by and exacerbated the effects of its willful breach by purposely failing to tender the rent due the following month. It would be a perversion of equitable principles to relieve a party of the impact of its intentional default.
In sum, the facts of this case do not justify equitable intervention. The parties freely bargained for the inclusion of a clause in their lease whereby the rent for the remainder of the lease term would be accelerated upon breach of tenant’s covenant to pay rent. The landlord was not required to give formal notice of default to trigger the acceleration clause, nor was the tenant given a grace period within which to cure it. Notwithstanding the lack of ameliorative provisions in the lease, Fifty States did send Pioneer notice of its default and went so far as to arrange a meeting between the parties at which the default could have been readily cured. That honoring at least this aspect of its "bargain may cause Pioneer fiscal hardship does not, standing alone, serve as a basis for construing the acceleration clause as a penalty under the guise of applying equitable principles to a routine commercial transaction.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court, Erie County for a determination of the amount due appellant under the lease in accordance with this opinion.
Judges Gabrielli, Jones, Wachtler and Fuchsberg concur with Chief Judge Cooke; Judge Jasen taking no part.
Order reversed, with costs, and the case remitted to Supreme Court, Erie County for further proceedings in accordance with the opinion herein.